**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| **JACK W. PETERSON JR., DONALD NELSON, individually, as Trustees, and in a representative capacity for the CONSTRUCTION INDUSTRY WELFARE FUND OF CENTRAL ILLINOIS,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**JOHN T. PETRY, Trustee, EDWARD J. HYNDS, JR., Trustee, BRUCE E. SEMLOW, Trustee, and CHRIS BUTLER, Trustee,**<br><br>**Defendants.** | Case No. 06-2072 |

**OPINION**

On May 12, 2006, Plaintiffs Jack Peterson and Donald Nelson, individually and as trustees of the Construction Industry Welfare Fund of Central Illinois filed their First Amended Complaint (#8). Plaintiffs bring their claim pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et. seq.*[1] On July 30, 2007, Defendants John Petry, Edward Hynds, Bruce Semlow, and Chris Butler filed a Motion for Summary Judgment (#39). Also on July 30, 2007, Plaintiffs filed a Motion for Summary Judgment (#41). For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED and Plaintiffs' Motion for Summary

---

[1] Plaintiffs also brought claims pursuant to the Labor Management Relations Act and Illinois state law. These claims were dismissed by this court in an Opinion (#28) entered August 23, 2006.

1

Judgment is DENIED.[2]

## FACTS

The Construction Industry Welfare Fund of Central Illinois (CIWF) is a multi-employer welfare benefit plan which was established to provide health benefits to its participants. A Board of Trustees comprised of three employer appointed trustees and three union appointed trustees administers the CIWF. Defendants Petry, Hynds, and Semlow are employer trustees with the CIWF and Defendant Butler is a union trustee with the CIWF. Plaintiffs Peterson and Nelson were the remaining two union trustees on the CIWF board. Peterson and Nelson were appointed by the Carpenters' Local Unions.

On January 31, 2005, the Board of Trustees met and Nelson made a motion to increase the hourly contribution rate by one dollar. Nelson and Michael Dummitt, Defendant Peterson's predecessor as union trustee, voted in favor of the motion while Butler, Semlow, and Petry opposed the motion. Dummitt then made a motion to increase the rate by eighty cents per hour. Dummitt, Nelson, Semlow, and Petry voted in favor of the eighty cent increase, while Butler voted against it. The following year, the Board of Trustees held their regularly scheduled meeting on January 27, 2006. All of the trustees were present with the exception of Hynds. Peterson and Nelson sought to increase the contribution rate by another dollar. After debating the issue, the majority of the trustees determined that an increase by that large of an amount was not necessary. As a result, Petry made

---

[2] On September 14, 2007, Plaintiffs filed a Motion to Strike Portion of Defendants' Reply (#50). Motions to strike are disfavored. See Clegg v. Sullivan Corp., 2003 WL 21254558, at *1 (S.D. Ind. 2003). Therefore, generally, it is not this court's practice to grant motions to strike when ruling on motions for summary judgment. See Fenje v. Feld, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003). This court is confident it can rely only on admissible evidence and appropriate arguments in ruling on the motions for summary sudgment. Accordingly, the Motion to Strike is DENIED.

a motion to increase the rate of contributions in the amount of twenty cents, from $5.00 per hour to $5.20 per hour, effective May 1, 2006. The increase was approved by a majority vote with Peterson abstaining and Nelson opposing the motion. Petry, Butler, and Semlow indicate in their affidavits that they believed that Plaintiffs' opposition to the motion was a breach of their fiduciary duties to the CIWF. Petry, Butler, and Semlow base this assertion on their belief that the Central Illinois Carpenters' Fund charged higher contribution rates than the CIWF and it would be easier for the Carpenters' Local Unions to convince their members to transition from the CIWF to the Central Illinois Carpenters' Fund if the contribution rates were comparable.

Prior to March 29, 2006, Peterson and Nelson made statements to Defendants that the Carpenters' Local Unions were considering leaving the CIWF and were petitioning other unions contributing to the CIWF to withdraw from the CIWF. As a result of these representations, Butler, who served as Chairman of the Board at the time, and Petry, who served as Secretary of the Board, asked Jill Kunkel, the CIWF Plan Administrator, to contact legal counsel for CIWF to determine how to remove the Carpenters' Local Unions' trustees and to draft any required documents to be presented at the next regularly scheduled trustees' meeting. As a result, legal counsel for CIWF drafted Amendment #3 to the Trust Agreement which states:

> This Trust Fund shall at all times be administered by Trustees, even in number, one-half of whom shall be representatives of the Employees ("Union Trustees") and one-half of whom shall be representatives of the Employers ("Employer Trustees"). There are presently six (6) Trustees.
>
> The authority to appoint all three of the Employer Trustees in vested in the Central Illinois Builders of A.G.C.

3

The authority to appoint one Union Trustee each is vested in the following Unions:

- Operative Plasterers' and Cement Masons' International Association, Local 143;

- Bricklayers, Stone Masons, Marble Masons, Tile Layers and Terrazzo Workers Local #8-chapter 17 [Bricklayers];

- International Brotherhood of Painters and Allied Trades - Local #363 [Painters].

Amendment 3 did not by its terms remove any trustees, but granted the authority to appoint a union trustee to the Bricklayers and Painters.

On March 29, 2006, a regularly scheduled meeting of the Board of Trustees took place. All trustees including Plaintiffs were present and participated in the meeting. Amendment #3 was presented at the meeting. Petry, Semlow, Hynds, and Butler voted in favor of the amendment while Peterson and Petry opposed the amendment. As a result, Amendment #3 was passed and made part of the Trust Agreement. The effective date of the amendment was 12:00 a.m. on May 1, 2006. On April 20, 2006, Kunkel received Letters of Appointment from the Bricklayers and Painters appointing Allen Wells and Daniel McCall as trustees of the CIWF effective May 1, 2006.

The Board of Trustees was to have its next scheduled meeting on April 28, 2006, but this meeting was canceled. The time and date of this meeting was discussed at the meeting held on March 29, 2006, at which Plaintiffs were present. Kunkel sent a letter to all trustees, including Plaintiffs, stating that the April meeting was canceled and would be rescheduled for early May. Nelson contacted Kunkel on May 1, 2006, to determine the date of the next board meeting, and Kunkel informed Nelson that the date of the next meeting had not been set.

A special meeting of the Board of Trustees was held on May 10, 2006. Butler, Petry, Hynds, and Semlow were present for the meeting. Also present at the meeting were McCall, the trustee appointed by the Bricklayers, and Wells, the trustee appointed by the Painters. Peterson and Nelson were not invited to the meeting. Butler, Semlow, Petry, and Hynds indicate in affidavits that Plaintiffs were not invited because the instant case had been filed by Peterson and Nelson at the time and because Defendants did not believe Plaintiffs were entitled to be present at the meeting. During the meeting, Kunkel presented the Letters of Appointment for McCall and Wells. Hynds made a motion to formally accept the letters naming the new trustees appointed by the Bricklayers and the Painters. The motion was approved by Butler, Petry, Hynds, and Semlow. In March 2007, the Executive Boards of the Bricklayers and the Painters executed resolutions confirming the prior appointments of McCall and Wells and confirming the removal of Plaintiffs as trustees. On April 27, 2007, Kunkel notified Butler, Peterson, Nelson, Petry, Hynds, Semlow, Wells, and McCall by letter of these actions.

Plaintiffs' claim, brought pursuant to ERISA,[3] is that Defendants breached their fiduciary duties as trustees of the CIWF because Defendants were not authorized by the Trust Agreement to dismiss Plaintiffs as trustees. The CIWF is organized pursuant to the Trust Agreement of the CIWF and the Plan of Benefits. Paragraph 39 of the Trust Agreement provides:

> Any action taken by the Trustees pursuant to this Trust Agreement and Declaration of Trust shall be by majority vote of the Trustees attending a regular meeting of the Trustees. A quorum for any such meeting shall be at least (2) Employer Trustees and

---

[3] This court dismissed Count II of Plaintiffs' complaint which alleged Defendants violated their fiduciary duties under ERISA by passing Amendment # 3 in an Opinion (#28) entered August 23, 2006.

at least (2) Union Trustees, except as provided in Paragraph 36. Any and all actions taken at such regular meeting shall have the same force and effect as if taken by unanimous approval.

As concerns construction of the Trust Agreement, paragraph 25 states:

The Trustees jointly shall have power to construe the provisions of this Trust Agreement and Declaration of Trust and the terms used herein and any construction adopted by the Trustees in good faith shall be binding upon the Unions, the Employers, and all persons covered by the Trust Agreement and Plan of Benefits, provided that any construction made, as aforesaid, which shall be in contravention of or inconsistent with the existing collective bargaining agreements between the parties hereto, shall not be binding upon the Employers, or their respective associations, or the Unions.

Paragraph 54 of the Trust Agreement provides that it can be amended at any time by a majority vote of the trustees with the exception of amendments that: (1) divert CIWF assets for purposes not allowed by paragraph 12 of the Trust Agreement; (2) create an unequal number of union and employer trustees; (3) alter the method of voting set forth in the Trust Agreement; or (4) are inconsistent with a collective bargaining agreement in effect between parties to the Trust Agreement.

As concerns the appointment and removal of trustees, Paragraph 21 of the Trust Agreement provides that "Trustees shall serve until their successors shall be selected and duly qualified." Paragraph 33 of the Trust Agreement states:

Any Union Trustee may be removed from office at any time by a resolution duly adopted at a regular or special meeting of the Executive Board of the Union. Notice

of said removal shall be given to all Trustees by delivering to them a certified copy of said resolution.

The term "Union" is defined "all labor unions . . . who have executed a collective bargaining agreement with an Employer providing for wages and periodic payment into the [CIWF], and whose inclusion in the [CIWF] shall further be subject to approval and acceptance by the Trustees." Paragraph 35 of the Trust agreement, which was subsequently amended by Amendment 1 to the Trust Agreement, states:

In the event any Union Trustee shall die, become incapable of acting hereunder, resign or be removed, or refuse to act hereunder, a successor Union Trustee shall be appointed immediately by the Union through a resolution of the Executive Board of the Union. Notice of said appointment shall be given to all Trustees by delivering to them a certified copy of said resolution. If the Union shall refuse, decline, or fail to appoint a successor Union Trustee within thirty (30) days after the Union Trustee has died, resigned, been removed, refused to act or otherwise ceased to act hereunder, then the Trustees shall authorize a Union, as defined herein, and which is not then responsible for the appointment of any Union Trustees hereunder, to appoint a successor Union Trustee, which said Trustee shall be appointed immediately by said Union. Thereafter, said Union shall be responsible for the appointment of any successor Union Trustee to the Union Trustee so appointed until such time as said Union shall decline, refuse or fail to appoint a successor Union Trustee in accordance with this paragraph in which case the Trustees shall once again authorize a Union, as defined herein, to appoint said successor Union Trustee

in accordance with the provisions of this paragraph. . . .

Paragraph 38 of the Trust Agreement states:

> Any successor Employer Trustee or any successor Union Trustee shall, immediately upon his appointment as a Successor Trustee and his acceptance of the trusteeship in writing, become vested with all the property, rights, powers and duties of a Trustee hereunder with like effect as if originally named as Trustee, and all the Trustees then in office and the insurance carrier of such policy shall be immediately notified.

Petry stated in his deposition that he "can't see where it's stated" in Amendment 3 that Plaintiffs were removed or that the authority of the Carpenters' Local Unions to appoint trustees on the CIWF had been removed. Petry further testified that he believed at the time the amendment was passed that its purpose was to remove Plaintiffs as trustees. Petry stated that the trustees decided to remove the Plaintiffs as a result of "rumors and rumblings" that Plaintiffs' unions would be withdrawing from the CIWF. Petry further testified that he believed Plaintiffs were breaching their fiduciary obligations because they were "representing the carpenters and not the balance of the . . . employees of the fund." Petry further indicated in his "layman's interpretation" that it was an error to interpret Amendment #3 to remove Plaintiffs as trustees of the CIWF. In addition, Petry stated that the only entity that had the right to remove union trustees is the executive board of the union. Petry later indicated in an affidavit that he was mistaken in his belief that Amendment # 3 removed Plaintiffs as trustees or was meant to do so.

Butler, Semlow, and Hynds indicated by affidavit that they believed at the time of the vote on Amendment #3 that the amendment allowed the Bricklayers and the Painters to appoint trustees

to the board while removing the power of the Carpenters' Local Unions to appoint trustees. Butler, Semlow, and Hynds further indicate that they believed that the Bricklayers and Painters could have left Plaintiffs on the board as union trustees, but the Bricklayers and Painters exercised their powers pursuant to Amendment #3 to appoint McCall and Wells. Finally, Butler, Semlow and Hynds indicate that once McCall and Wells were selected and duly qualified, Peterson and Nelson were removed as trustees by operation of Paragraph 21 of the Trust Agreement.

ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988).

ERISA provides that a fiduciary has a duty to act "in the interest of the participants and beneficiaries" and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). "To state a claim for breach of fiduciary duty under ERISA, the plaintiff must establish: (1) that the defendants are plan fiduciaries; (2) that the defendants breached their fiduciary duties; and (3) that the breach caused harm to the plaintiff." Brosted v. Unum Life Ins. Co

9

of Am., 421 F.3d 459, 465 (7th Cir. 2005). "'ERISA's fiduciary duty was meant to hold plan administrators to a duty of loyalty akin to that of a common-law trustee.'" Jenkins v. Yager, 444 F.3d 916, 924 (7th Cir. 2006), quoting Ameritech Benefit Plan Comm.v. Comm. Workers of Am., 220 F.3d 814, 825 (7th Cir. 2000). Therefore, "the fiduciary must act as though he were a reasonably prudent businessperson with the interests of all the beneficiaries at heart.'" Jenkins, 444 F.3d at 924, quoting Ameritech, 220 F.3d at 825. As concerns a trustee's fiduciary duty with regard to interpretation of the terms of a plan, "'trustees do not breach their fiduciary duties by interpreting the plan in good faith, even if their interpretation is later determined to be incorrect.'" Lusk v. Ameriserv Fin., Inc., 2007 WL 2228561 at * 7 (S. D. Ind. 2007), quoting Challenger v. Local Union No. 1, 619 F.2d 645, 649 (7th Cir. 1980).

The dispute in this matter centers around whether Defendants breached their fiduciary duties by improperly interpreting provisions of the Trust Agreement resulting in Plaintiffs ultimately being replaced as trustees of the CIWF. Defendants argue that Paragraph 21 of the Trust Agreement governs the appointment and removal of trustees who are being selected by an entity that is forming the CIWF or replacing an entity that previously had the power to select and appoint trustees. The language Defendants cite from Paragraph 21 is "Trustees shall serve until their successors shall be selected and duly qualified." Defendants argue that once a new union has been selected and appointed its choice for union trustee, the remaining trustees are obligated to "duly qualify" the new trustee pursuant to Paragraph 21. Under Defendants interpretation of the Trust Agreement, Amendment #3 appointed the Bricklayers and Painters as new unions capable of appointing trustees under the Trust Agreement. Thereafter, the Executive Board of the Bricklayers appointed Wells as its trustee and the Executive Board of the Painters appointed McCall as its trustee. These new

trustees were then duly qualified by Defendants at the special meeting held on May 10, 2006. Defendants argue that once Wells and McCall were "selected and duly qualified" pursuant to Paragraph 21, Plaintiffs were automatically removed by operation of Paragraph 21. Defendants argue that it is only future changes in appointment by a specific union that is governed by Paragraph 33, while appointments by a new union are governed by Paragraph 21.

This court agrees with Defendants that the interpretation of the Trust Agreement proffered by Defendants is a proper reading of the Trust Agreement. Amendment # 3 was appropriately passed with four trustees voting in favor of the Amendment and Plaintiffs voting against the Amendment. Pursuant to Amendment #3, the Painters' and Bricklayers' Unions were authorized to appoint trustees to the Board as opposed to the Carpenters' Local Unions. Pursuant to this authority, the Painters and Bricklayers appointed Wells and McCall. At the special meeting of the Board held on May 10, 2006, the Board formally accepted the letters naming the new trustees appointed by the Bricklayers and the Painters. Defendants properly read Paragraph 21 as removing Plaintiffs as trustees based on the language stating that "Trustees shall serve until their successors shall be selected and duly qualified." Based upon Defendants' reasonable reading of this language, Plaintiffs were removed as trustees once Wells and McCall, their successor Trustees, were appointed by the Painters and Bricklayers and accepted by the Board.

Plaintiffs argue that pursuant to Paragraph 35 of the Trust Agreement, the Carpenters' Local Unions had an absolute right to appoint any successor trustees to Plaintiffs. Plaintiffs argue that this paragraph of the Trust Agreement should be interpreted to mean that no other union is authorized to appoint a successor to a trustee appointed by another union unless the appointing union's trustee "shall die, become incapable of acting hereunder, resign or be removed, or refuse to act," and the

appointing union "shall refuse, decline, or fail to appoint a successor Union Trustee within thirty (30) days after the Union Trustee has died, resigned, been removed, refused to act or otherwise ceased to act." However, it is clear from a reading of Paragraph 35, as amended by Amendment # 1, that this portion of the Trust Agreement refers to situations in which a union fails to act in response to the need to name a replacement trustee rather than to situations in which a new union is selected to name a trustee on the Board.

Furthermore, this court agrees with Defendants that Paragraph 33 does not apply to the situation presented in the instant case. Paragraph 33 states that, "Any Union Trustee may be removed from office at any time by a resolution duly adopted at a regular or special meeting of the Executive Board of the Union." Defendants correctly read this paragraph as applying to appointments made by a union after the initial appointment of a union trustee by that same union. That is not the situation here because new unions were selected to appoint representatives on the Board.

Plaintiffs argue the deposition testimony of Petry supports their position that Defendants' interpretation of the Trust Agreement was not in good faith. Petry testified in deposition as follows:

Q: Okay. Now, isn't it a fact that you interpreted [Amendment # 3] so as to operate in such a way that it removed Mr. Peterson and Mr. Nelson as trustees on the fund?

A: Yes.

. . .

Q: Now, can you indicate - - now, you've already looked at Amendment No. 3 and you find no reference whatsoever to the removal of those trustees therein; isn't that correct?

A: That's correct.

Q: All right. Can you tell us the basis, then, for your interpretation?

A: Yes. We understood that the carpenters were leaving the fund and that the painters and the cement finishers had evidenced interest in having their unions appoint trustees to the fund.

. . .

Q. Okay. Now, can you indicate whether there is anything – well, first of all, let me ask you this. You never passed an amendment to the trust removing them; isn't that correct?

A. We thought we had.

Q. I don't want - - did you ever pass an amendment removing those trustees?

A. Evidently not.

. . .

Q. Right now as you sit here today, are you aware of any resolution or amendment to the fund that removes these two - - that removed these two trustees, Mr. Peterson and Mr. Nelson, because I'd like to see it?

A. Yeah, I don't.

Q. You don't have one, do you?

A. No.

Q. You don't know of one.

A. No.

Q. Okay.

      A. Other than the ones we discussed.

      Q. And you've already looked at those and acknowledged that they don't provide for such; isn't that correct?

      A. That's - - in my interpretation as a layman, I don't see it, yes.

The court fails to see how this testimony demonstrates a breach of fiduciary duty. Defendants do not assert that Amendment #3 actually removed Plaintiffs as trustees. Rather, Amendment #3 specified different unions for the appointment of trustees. It was after these new unions, the Painters and Bricklayers, appointed new trustees different than Plaintiffs that Plaintiffs were removed by operation of Paragraph 21. The fact that Petry may have misunderstood which terms of the Trust Agreement resulted in the removal of Plaintiffs as Trustees does not negate that a proper reading of the Trust Agreement gave Defendants the power to remove them. Furthermore, nothing in Petry's testimony indicates that Defendants interpreted the Trust Agreement in bad faith.

      In support of their arguments, Plaintiffs cite Burud v. Acme Elec. Co., Inc., 591 F. Supp. 238 (D. Alaska 1984). In Burud, the court found that two trustees of an employee stock option plan lacked authority to pass a resolution removing a third trustee from the board of directors because the plan provided that the employer has the sole authority to remove and appoint a trustee. Burud, 591 F. Supp. at 243. In the instant case, as discussed above, no such provision was contained in the Trust Agreement which limited the authority of the trustees to remove other trustees. The court finds more persuasive the case of Worthy v. New Orleans Steamship Ass'n/Int'l Longshoremen's Ass'n, AFL-CIO Pension Plan, 342 F.3d 422 (5th Cir. 2003). In Worthy, a union filed suit against an unincorporated association which oversaw a trust establishing pension, welfare, vacation, and holiday plans for the union's employees. The union alleged the defendants breached their fiduciary

14

duties under ERISA by, *inter alia*, failing to provide the union a place on the trustee board. The court found no breach of fiduciary duty on this claim because no term in the plan guaranteed the union a position on the board. Worthy, 342 F.3d at 427. Likewise, in the instant case, nothing in the Trust Agreement guaranteed Plaintiffs' unions a position on the Board. Rather, as in Worthy, no term in the Trust Agreement precluded the Trustees from naming new unions to appoint representatives on the Board. The Trustees lawfully exercised their right to amend the Trust Agreement pursuant to Paragraph 54 which allows the Trust Agreement to be amended at any time by a majority vote of the trustees with the exception of amendments that divert CIWF assets, create an unequal number of Union and Employer Trustees, alter the method of voting method set forth in the Trust Agreement, or are inconsistent with a collective bargaining agreement in effect between parties to the Trust Agreement. The amendment changing the unions which appoint representatives does not fit within any of these exceptions.

Furthermore, the fact that Defendants were attempting to remove Plaintiffs as trustees does not support a claim for breach of fiduciary duty. Plaintiffs argue that Defendants removed them as Trustees to the detriment of the CIWF because Defendants opposed Plaintiffs' proposed increase in the hourly contribution rate. The evidence before this court indicates that Nelson made a motion to increase the hourly contribution rate by one dollar on January 31, 2005, and Butler, Semlow, and Petry opposed the motion. Peterson's predecessor then made a motion to increase the rate by eighty cents per hour, and only Defendant Butler voted against it. On January 27, 2006, Plaintiffs sought to increase the contribution rate by another dollar. After debating the issue, the majority of the trustees determined that an increase by that amount was not necessary. As a result, Petry made a motion to increase the rate of contributions in the amount of $.20, from $5.00 per hour to $5.20 per

hour. The increase was approved by a majority vote with Peterson abstaining and Nelson opposing the motion. Petry, Butler, and Semlow indicate in their affidavits that the purpose behind Plaintiffs' proposed increases was to convince their members to transition from the CIWF to the Central Illinois Carpenters' Fund because the contribution rates would be lower. This interpretation of Plaintiffs' actions is supported by the fact that Peterson and Nelson made statements to Defendants that the Carpenters' Local Unions were considering leaving the CIWF and were petitioning other unions contributing to the CIWF to withdraw from the CIWF. Based on these facts, Plaintiffs have failed to set forth any evidence which demonstrates that the Defendants' actions were detrimental to the CIWF.

Plaintiffs further argue that Defendants attempted to retroactively appoint McCall and Wells arguing that the resolutions by the Painters and Bricklayers were not signed until March 2007. However, on April 20, 2006, Kunkel received Letters of Appointment from the Bricklayers and Painters appointing Wells and McCall as trustees of the CIWF effective May 1, 2006. While in March 2007, the Executive Boards of the Bricklayers and the Painters executed resolutions confirming the prior appointments of McCall and Wells and confirming the removal of Plaintiffs as trustees, this resolution was only required if Paragraph 33 were the relevant provision pursuant to which Plaintiffs were removed. However, as discussed above, Paragraph 21 is the relevant provision. Pursuant to Paragraph 21, Plaintiffs were automatically removed by operation of this paragraph once Wells and McCall were selected and duly qualified. This was accomplished at the May 10, 2006, meeting of the Board of Trustees.

Finally, Plaintiffs argue that a quorum was not present for actions taken by the CIWF. Paragraph 39 of the Trust Agreement states that "[a]ny action taken by the Trustees pursuant to this

Trust Agreement and Declaration of Trust shall be by majority vote of the Trustees attending a regular meeting of the Trustees. A quorum for any such meeting shall be at least (2) Employer Trustees and at least (2) Union Trustees, except as provided in Paragraph 36 [which governs voting when there is a vacancy]." It is undisputed that all trustees, including Plaintiffs, were present at the March 29, 2006, meeting in which Amendment #3 was passed. Furthermore, as discussed above, Wells and McCall were appointed as Plaintiffs' replacements on May 10, 2006. Plaintiffs have presented no evidence that at least two union trustees, which includes Wells and McCall, were not present at any subsequent meetings. Thus, the only meeting at which a quorum arguably was not present was the May 10, 2006, meeting at which the appointments of Wells and McCall were approved. While it is true that the presence of Wells and McCall created a quorum once their appointments were approved, there were not two other union trustees present to vote on their approval. However, assuming this was a violation of the Trust Agreement, there is no evidence that it affected in any manner whether Wells and McCall would have been appointed. All three Defendant employer trustees and the remaining Defendant union trustee voted to approve the appointments of Wells and McCall. Even had Plaintiffs been present and voted against their appointments, the remaining votes would have ensured Wells and McCall were properly installed.

Accordingly, this court concludes that there is no genuine issue of material fact that Defendants' properly interpreted the terms of the Trust Agreement with regard to the removal of Plaintiffs as trustees of the CIWF. Furthermore, even if Defendants' interpretation could be deemed incorrect, the undisputed evidence indicates Defendants interpreted the Trust Agreement in good faith. Accordingly, summary judgment in Defendants' favor is appropriate.

IT IS THEREFORE ORDERED:

(1) Plaintiffs' Motion for Summary Judgment (#41) is DENIED.

(2) Defendants' Motion for Summary Judgment (#39) is GRANTED.

(3) Plaintiffs' Motion to Strike (#50) is DENIED.

(4) The final pretrial conference scheduled in this matter for November 16, 2007, at 10:00 a.m. and the trial scheduled to commence on November 26, 2007, are VACATED.

(5) This case is terminated.

ENTERED this   10th   day of October, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE